IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERT WARREN,

               Petitioner,

      v.                                    Civil Action No.
                                        9:05-CV-1032 (LEK/DEP)

DALE ARTUS, Superintendent of Clinton
Correctional Facility,

               Respondent.

_____

APPEARANCES:                       OF COUNSEL:

FOR PETITIONER:

ROBERT WARREN, *Pro Se*

FOR RESPONDENT:

HON. ELIOT SPITZER            MALANCHA CHANDA, ESQ.
Attorney General of the          Assistant Attorney General
State of New York
120 Broadway
New York, New York 10271

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

    Petitioner Robert Warren, who at the time of filing was a prison

inmate as a result of a 1998 St. Lawrence County conviction of six separate offenses based upon a guilty plea entered in satisfaction of nine pending indictments, has commenced this proceeding seeking federal habeas relief, pursuant to 28 U.S.C. § 2254.  In his petition, Warren asserts that the cumulative sentence imposed in connection with his crimes of conviction, and upheld on appeal, resulted in his serving two sentences for the same offense.

In response to Warren's petition respondent has moved seeking its dismissal, arguing that its filing was untimely under the governing limitation provision, and that there is no basis to find equitable tolling or otherwise excuse its lateness.  Respondent's motion also addresses the merits of Warren's petition, asserting that the state courts' rejection of his double jeopardy claim was neither contrary to nor an unreasonable application of governing clearly established Supreme Court precedent.[1]

Having carefully reviewed the parties' submissions and considered

---

[1]     While moving for pre-answer dismissal of a section 2254 petition is generally not a favored practice, there is authority to support a respondent's choice to make such a motion under appropriate circumstances.  *See McLeod v. Moscicki*, No. 02 Civ. 9335, 2003 WL 22427757, at *3 (S.D.N.Y. Oct. 22, 2003) (allowing a Rule 12(b)(6) motion under similar circumstances, and citing cases); *see also*, *e.g.*, *Valverde v. Stinson*, 224 F.3d 129, 136 (2d Cir. 2000) (discussing motion to dismiss on basis of section 2244 without comment on procedural propriety); *Garcia v. Portuondo*, 334 F. Supp.2d 446, 450 (S.D.N.Y. 2004) (same).

their arguments regarding the preliminary, threshold issue, I find that the filing of the petition in this matter was untimely, and that the petitioner has presented no basis to overlook this deficiency.  Turning to the merits of Warren's otherwise untimely petition, and assuming that his habeas claim is deemed to have been properly exhausted, when considered with the requisite deferential standard as a backdrop, I find that the state court's rejection of that claim is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

I.      BACKGROUND

On August 4, 1998, at the time faced with as many as nine pending indictments against him, petitioner entered a plea of guilty in St. Lawrence County Court to six separate felony offenses, including attempted escape in the first degree, attempted second degree burglary, criminal possession of marijuana in the second degree, first degree criminal contempt, sexual abuse in the first degree, and driving while intoxicated.  *See* Transcript of Plea Hearing, conducted on August 4, 1998, at 2-19.  As a result of those pleas, petitioner was sentenced on September 8, 1998 as a second felony offender to various determinate and indeterminate prison terms, some of which were to run concurrently, while others were to be consecutively

served, resulting in an aggregate sentence of between nine and ten and

one-half years of incarceration.[2]  Transcript of Sentencing Hearing,

conducted on September 8, 1998, at 2-22; *see also People v. Warren,*

280 A.D.2d 75, 76, 721 N.Y.S.2d 152, 152-53 (3d Dep't 2001).  Also

included as part of the trial court's sentence was the issuance of an order

of protection in favor of petitioner's spouse and stepdaughter, both of

whom were found to be victims of certain of his crimes.  *Warren,* 280

A.D.2d at 76, 721 N.Y.S.2d at 153.  Petitioner was represented by counsel

both at the time of entry of his plea, and at sentencing.

Petitioner appealed his conviction to the New York State Supreme

Court Appellate Division, Third Judicial Department, resulting in the

---

[2]      The sentence imposed by the trial court included 1) an indeterminate term of imprisonment of between one and one-half and three years for attempted escape in the first degree; 2) a determinate term of three and one-half years on the charge of attempted second degree burglary, to run consecutively to the sentence for attempted escape; 3) an indeterminate term of between two and four years of incarceration on the drug possession charge, to run concurrently with the sentences for attempted escape and attempted burglary; 4) an indeterminate term of two to four years of imprisonment on the charge of first degree criminal contempt, to run concurrently with the sentences for both attempted escape and attempted burglary; 5) a determinate term of four years of imprisonment on the charge of first degree sexual abuse, to run consecutively to the sentences for attempted escape and attempted burglary, but concurrently with the sentences for marijuana possession and criminal contempt; and 6) an indeterminate term of imprisonment of between two and four years on the charge of driving while intoxicated, to run concurrently with all other sentences.  *See* Transcript of Sentencing Hearing, conducted on September 8, 1998, at 16-20.  The net result of those sentences required petitioner to serve consecutive sentences of one and one-half to three years for attempted escape, three and one-half years for attempted burglary, and four years for sexual abuse, yielding an aggregate sentence of between nine and ten and one-half years of incarceration.

issuance by that court of a decision dated March 1, 2001, modifying the

conviction in a manner which did not affect his sentence of incarceration,

and otherwise affirming the trial court's judgment.  *Id.* at 77-78, 721

N.Y.S.2d at 153-54.  While rejecting the argument now being made to this

court, regarding the cumulative effects of his sentence, in its opinion the

Third Department did conclude that the trial court had erred in its issuance

of the order of protection, in that it exceeded in duration the maximum

period authorized under New York law.  *Id.* at 77, 721 N.Y.S.2d at 153.

Finding the information necessary to affix an appropriate expiration date to

be lacking in the record, the Appellate Division remitted the matter to the

trial court for the limited purpose of reissuing an appropriate order of

protection with a proper end date.  *Id.* at 78, 721 N.Y.S.2d at 153-54.  In

its decretal paragraph, the Third Department

> [o]rdered that the judgment is modified, on the law,
> by reversing so much thereof as fixed the duration
> of the order of protection; matter remitted to the
> County Court of St. Lawrence County for further
> proceedings not inconsistent with this Court's
> decision; and, as so modified, affirmed.

*Id.*  There is no indication in the record that petitioner sought leave to

appeal that determination to the New York State Court of Appeals.[3]  It was not until on or about July 12, 2004 that the trial court acted upon the remittitur and issued a new order of protection in the case.  *See* Petitioner's Memorandum (Dkt. No. 11) Attachment 6.

In addition to perfecting a direct appeal from his judgment of conviction, petitioner has pursued efforts to obtain two separate forms of collateral relief from the state courts.  On August 31, 2004, Warren filed an application under section 440.20 of the N.Y. Criminal Procedure Law to set aside his sentence.  That application was denied by order issued by County Court Judge Kathleen Rogers on October 19, 2004.  Leave to appeal that determination to the New York State Court of Appeals was subsequently denied by the Third Department on December 29, 2004.

Petitioner also sought relief in the state courts through the filing on May 6, 2004, in Clinton County Supreme Court, of an application for a writ of habeas corpus pursuant to Article 70 of the N.Y. Civil Practice Law and Rules.  By decision and judgment issued on June 7, 2004, Acting

---

[3]      In his petition, Warren asserts that permission for leave to appeal that determination was made, but denied.  *See* Petition (Dkt. No. 1) ¶ 9(e), at 3.  There is no support for this assertion, however, either in the state court records provided by respondent's counsel or in the reported history associated with that appeal.  Moreover, in a later submission, Warren acknowledged that he did not pursue the matter to the New York State Court of Appeals.  *See* Amended Memorandum (Dkt. No. 5) ¶ 3, at 2.

Supreme Court Justice S. Peter Feldstein denied petitioner's application for state court habeas relief.  That determination was upheld, on appeal to the Third Department, by decision issued on April 21, 2005.  *See People ex rel. Warren v. Artus,* 17 A.D.3d 896, 792 N.Y.S.2d 879 (3d Dep't 2005).[4]  On June 30, 2005, leave to appeal the denial of habeas relief to the New York Court of Appeals was denied.  *People ex rel. Warren v. Artus,* 5 N.Y.3d 705, 834 N.E.2d 1262 (2005).

II.   PROCEDURAL HISTORY

Petitioner commenced this proceeding on August 15, 2005.  Dkt. No. 1.   Appropriately named as the respondent in Warren's petition is Dale Artus, Superintendent of the Clinton Correctional Facility, where petitioner was held at the time of filing.  *Id.*  Following the filing by petitioner on December 22, 2005 of a legal memorandum in support of his habeas petition, Dkt. No. 5, apparently prompted by a previously-issued order by District Judge Lawrence E. Kahn on November 21, 2005, Dkt. No. 4, respondent Artus, who is represented by the office of the New York State Attorney General, responded by the filing on July 31, 2006 of a motion to dismiss Warren's petition on the basis of the governing one year

---

[4]      An application for reargument of the state court's refusal to grant habeas relief was denied on August 26, 2004.

statute of limitations, and additionally on the merits.  Dkt. No. 10.

Petitioner has since countered in opposition to that motion.  Dkt. No. 11.

Respondent's motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. Rule 72(b).

III.    DISCUSSION

    A.    Mootness

Of its own initiative, the court has made an investigation as to

petitioner's current status, and has learned that he was released from

custody in October of 2006.  *See* http:/nysdocslookup.docs.state.ny.us.

The court must therefore determine whether Warren's release from prison,

subsequent to commencement of this proceeding, renders the habeas

claims now raised moot.

Habeas corpus relief is available to a state prisoner who is "in

custody pursuant to the judgment of a State court . . . on the ground that

he [or she] is in custody in violation of the Constitution or laws or treaties

of the United States".   28 U.S.C. § 2254(a).  While on its face this

provision contemplates that a habeas petitioner be in custody, section

2254 does not require that a petitioner be physically confined in order for a federal district court to retain jurisdiction over a properly filed habeas petition.  *See Maleng v. Cook,* 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989).  Thus, for example, a petitioner who, like Warren, has been released from custody after the filing of a habeas petition satisfies the "in custody" requirement of section 2254 if he or she remains subject to adverse collateral consequences which result from the subject conviction. *See Carafas v. LaVallee*, 391 U.S. 234, 237-39, 88 S. Ct. 1556, 1559-60 (1968).  Collateral consequences are presumed to persist as a result of a conviction even after an inmate's release from prison.[5]  *Spencer v. Kemna,* 523 U.S. 1, 12, 118 S. Ct. 978, 985 (1998) ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting *Sibron v. New York,* 392 U.S. 40, 55, 88 S. Ct. 1889, 1899 (1968)); *see also, e.g., Barker v. Reynolds*, No. 9:98-CV-0732, 2001 WL 1860929, at *2 (N.D.N.Y. Apr. 19, 2001) (Sharpe, M.J.) (citing *Spencer* and *Sibron*); *Binder v. Szostak*, No. 96-CV-840, 1997 WL 176353, at *3 (N.D.N.Y. Apr. 11, 1997) (Pooler, J. and DiBianco,

---

[5]    Examples of such potential collateral consequences can include the inability to serve as a juror, engage in certain businesses, or vote.  *Johnson v. Levine*, No. 00 Civ. 8402, 2001 WL 282719, at *1 (S.D.N.Y. Mar. 21, 2001).

M.J.).

In this case, since there is no indication the petitioner no longer suffers any adverse consequences from his conviction, his claims do not appear to have been rendered moot by his release from prison.

B.    Statute of Limitations

Enactment by Congress of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant changes to the prisoner litigation landscape.  One of those was the institution of a one-year statute of limitations for habeas corpus petitions filed after April 24, 1996.  28 U.S.C. § 2244(d).[6]

---

[6]    That section provides, in relevant part, that

(1) [a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

*       *       *

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The obvious starting point for resolving issues surrounding the timeliness of a section 2254 habeas petition is a determination of when the challenged conviction became final.  In most cases, including in connection with convictions finalized subsequent to the April 24, 1996 effective date of the AEDPA, a state conviction becomes final when the time to seek review in the Supreme Court by petition for writ of *certiorari* expires.  *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.), *cert. denied*, 534 U.S. 924, 122 S. Ct. 279 (2001).  In this case, however, petitioner did not seek leave to appeal the Third Department's determination to the New York State Court of Appeals.  Accordingly, Warren's conviction became final on March 31, 2001, upon expiration of the thirty day period within which to seek review by that court of the Appellate Division's decision affirming his conviction.  *Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir. 2002); *People v. Wooley,* 40 N.Y.2d 699, 700-01, 358 N.E.2d 493, 494 (1976); *see* N.Y. Criminal Procedure Law § 460.10(5)(a).

In his opposition to respondent's motion, petitioner argues that because of the fact that the Appellate Division remitted the matter to the sentencing court for the issuance of an amended order of protection, an act which did not occur until July of 2004, the Third Department's decision

was not immediately appealable, and thus his conviction was not final, until after the amended order of protection was issued.  In making that argument, Warren places heavy reliance upon the Ninth Circuit's decision in *United States v. Colvin,* 204 F.3d 1221 (9th Cir. 2000).  In that case the two judge majority of the panel hearing the case, over a spirited dissent, concluded that an appellate decision which affirmed the defendant's conviction on two of three counts, but reversed as to the third and remanded the matter to the trial court with directions to strike the conviction on the third count and make a corresponding reduction in the special assessment imposed, was not a final determination which sufficed to trigger commencement of the applicable period for seeking habeas review, in that case under 28 U.S.C. § 2255.[7]  *Id.* at 1222-26.

Unfortunately for Warren, the Ninth Circuit's decision in *Colvin* has not been universally accepted, and in fact was recently rejected by the Second Circuit in *Burrell v. United States,* 467 F.3d 160 (2d Cir. 2006).  In *Burrell,* after reviewing the applicable caselaw, which was noted to be in

---

[7]     28 U.S.C. § 2255 prescribes a mechanism for a sentenced federal prisoner to challenge his or her continued custodial status by seeking to vacate, set aside or correct the sentence, thereby partially supplanting earlier jurisprudence relying upon 28 U.S.C. § 2241 to accomplish such an end. *Cephas v. Nash,* 328 F.3d 98, 103-04 (2d Cir. 2003).

conflict, including the Ninth Circuit's decision in *Colvin*, the Second Circuit concluded that when a portion of a criminal judgment is reversed and the matter is remanded to the trial court solely for the purpose of performing a "strictly ministerial task of correcting the judgment" in a manner not affecting the defendant's sentence, the appellate decision is not thereby deprived of finality. *Id.* at 169.

In order to determine whether *Burrell* is controlling in this case, it is necessary to understand the interplay between the petitioner's judgment of conviction and the order of protection issued by the trial court.  New York law defines the term "judgment" as being "comprised of a conviction and the sentence imposed" by the court.  N.Y. Crim. Proc. Law § 1.20(15) (McKinney 2003); *People v. Hernandez*, 93 N.Y.2d 261, 267, 689, 711 N.E.2d 972, 975 (1999).  A criminal defendant has the right to appeal a "judgment."  N.Y. Crim. Proc. § 450.10 (McKinney 2005); *People v. Nieves*, 2 N.Y.3d 310, 314, 778 N.Y.S.2d 751, 811 N.E.2d 13, 16 (2004); *Hernandez*, 93 N.Y.2d at 269, 711 N.E.2d at 976.  Under New York Law, an order of protection is not a form of punishment or a component of sentencing, but is instead a measure taken to protect victims and witnesses.  *Nieves*, 2 N.Y.3d at 316, 811 N.E.2d at 17.  An order of

13

protection issued at the time of sentencing is, nonetheless, "part of the final adjudication of the criminal action involving [the] defendant." *Id.* at 315, 811 N.E.2d at 16.

In *Nieves*, the court drew an analogy between an order of protection and a certification as a sex offender under the Sex Offender Registration Act, codified at N.Y. Correction Law § 168 *et seq. Id.* at 315, 811 N.E.2d at 16-17.  The court held that while neither is a component of sentencing, both are part of the final judgment of conviction in a criminal case.  *Id.* Accordingly, a defendant has the right to appeal an order of protection entered at sentencing.  *Id.*  Applying a similar line of reasoning, in *Hernandez* the court held that the defendant's certification as a sex offender "was unmistakably part of the court's final adjudication with respect to defendant's crimes," and that the certification, along with the order of protection entered against the defendant, "formed an integral part of the conviction and sentencing."  93 N.Y.2d at 267, 711 N.E.2d at 975. It is thus apparent that under New York law, the issuance of an order of protection entered at sentencing, while not affecting a defendant's sentence, is part of the final judgment entered in a criminal case.

The circumstances now presented are closely analogous to those

14

before the court in *Burrell*.  As in *Burrell,* the Third Department remitted

the matter to the trial court for the sole purpose of performing a ministerial

task, in this case to recalculate the duration of its order of protection.  In

doing so the Third Department issued specific directives for the court to

follow when affixing the duration of the order of protection, instructing it

that "the maximum duration of the order of protection is three years from

the date of the expiration of the four-year maximum" of the sentences

imposed upon the criminal contempt and sexual abuse convictions.

*Warren,* 280 A.D.2d at 77-78, 721 N.Y.S.2d at 153.  While the trial court

unmistakably retained the discretion to issue an order of protection of a

shorter duration, it had already plainly evidenced its intention to issue one

to remain in effect for the maximum allowable period.  On remand, the trial

court was thus left to perform a mere arithmetic calculation, using as

guidance the specific instructions provided by the Third Department.  That

calculation thus was one which "'involv[ed] obedience to instructions. . .

instead of discretion, judgment, or skill,'" and was therefore a ministerial

duty.  *Burrell,* 467 F.3d at 164 (*quoting* Blacks Law Dictionary 1017 (8th

Ed. 2004)).  Because the remand was clearly for "ministerial purposes," it

did not delay the "judgment's finality."  *Id.*  Based upon these

circumstances I find that petitioner's judgment of conviction became final thirty days following issuance of the Third Department's decision, or on March 31, 2001.

Once the appropriate limitation period commencement date is established, it is next necessary to determine whether there are any intervening tolling periods resulting from applications by the petitioner for collateral review.  Under the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is properly excludable from the one year limitation period, and results in its tolling.  28 U.S.C. § 2244(d)(2).  Because the applicable statute speaks in terms of tolling, however, any such collateral or other review application filed within the otherwise applicable one year statute of limitations merely serves to toll the limitation period; such an event does not have the effect of resetting the one year clock.  *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.) *(per curiam)*, *cert. denied,* 531 U.S. 840, 121 S. Ct. 104 (2000); *see also Stokes v. Miller,* 216 F. Supp.2d 169, 172 N.3 (S.D.N.Y. 2000) ("It is well-settled that post-conviction or other collateral review does not start the one year statute of limitations to run anew") (citing *Smith*).

The petitioner in this case filed two applications for collateral review, one by way of an application under section 440.20 to vacate his sentence, and the other in the form of a petition seeking state court habeas review under Article 70 of the N.Y. Civil Practice Law and Rules.  Since both of those applications were filed in 2004, and thus after expiration of the one year limitation period, they did not effect any tolling of that period.[8] Consequently, even giving petitioner the benefit of the prison mailbox rule, in light of his *pro se* inmate state status, *see Noble v. Kelley,* 246 F.3d 93, 97 (2d Cir.), *cert. denied,* 534 U.S. 886, 122 S. Ct. 197 (2001), and assuming that the petition was conveyed to prison officials on August 12, 2005, the day on which it was signed, it was untimely absent a basis to overlook its lateness.

C.     Equitable Tolling

While Warren's petition is facially time-barred, the Second Circuit has cautioned that a habeas petition which would otherwise be subject to dismissal in light of the AEDPA's statute of limitations may nonetheless be

---

[8]        Although a timely application under section 440.20 filed within one year after petitioner's judgment of conviction became final would have served to toll the application limitations period, *see King v. Cunningham,* 442 F. Supp.2d 171, 180 (S.D.N.Y. 2006), the situation is less clear with regard to his habeas petition.  *See Martino v. Berbary,* No. 03-CV-0923, 2005 WL 724133, at *2 (W.D.N.Y. Mar. 30, 2005) (collecting cases and noting a split among courts within the circuit on this issue).

considered by a district court where the court determines that the statute of limitations should be equitably tolled. *See Smith*, 208 F.3d at 17-18. And, although the Second Circuit has acknowledged that the "question remains open" as to whether the United States Constitution requires that an "actual innocence'" exception be engrafted onto the AEDPA's statute of limitations, *see Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003), that court has nevertheless directed district courts to consider a properly raised claim of actual innocence as a basis for invoking equitable tolling before dismissing a habeas petition as untimely filed. *Id.*; *see also Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004).

### 1.   Traditional Tolling

Equitable tolling applies "only in the 'rare and exceptional circumstance[ ].'" *Smith*, 208 F.3d at 17 (quoting *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir.), *cert. denied*, 528 U.S. 1007, 120 S. Ct. 504 (1999)) (alteration in original).  Under traditional tolling principles, the equitable tolling of the AEDPA's statute of limitations is only available when "'extraordinary circumstances' prevent a prisoner from filing a timely habeas petition." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (quoting *Smith*, 208 F.3d at 17); *see also Agramonte v. Walsh*, No. 00 CV

18

892, 2002 WL 1364086, at *1 (E.D.N.Y. June 20, 2002).  "To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time."  *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001) (quoting *Smith*, 208 F.3d at 17), *cert. denied*, 535 U.S. 1017, 122 S. Ct. 1606 (2002); *see also Warren*, 219 F.3d at 113 (citing *Smith*, 208 F.3d at 17).

In this instance, petitioner does seemingly request equitable tolling, arguing that his lack of access to sufficient books and legal assistance, as well as the fact that he did not receive (or even request) a copy of his sentencing minutes until April of 2004, provide a basis for equitable tolling. Such circumstances, however, are insufficiently unusual or compelling to warrant a finding of equitable tolling in this case.  *Gant v. Goord,* 430 F. Supp.2d 135, 139 (W.D.N.Y. 2006) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances."); *Peck v. United States,* No. 06-CV-0822, 03-CR-496,

2006 WL 3762001, at *5 (N.D.N.Y. Dec. 20, 2006) (finding no basis for equitable tolling where petitioner claimed that he had inadequate access to legal books and legal assistance).

### 2.   Actual Innocence Tolling

To ameliorate the harshness of the AEDPA's one year procedural bar to seeking habeas review in the unusual case where the petitioner appears to be the victim of a fundamental miscarriage of justice and is actually innocent of the crime of conviction, courts, including the Second Circuit, have suggested that the presentation of a credible claim of actual innocence may provide a basis for equitable tolling, provided that the petitioner can also show that he or she pursued the claim with reasonable diligence. *Doe*, 391 F.3d at 161; *Whitley*, 317 F.3d at 225.  Addressing the tension which such an exception would potentially present with respect to the considerations of comity and finality underpinning the AEDPA's limitations requirement, the Second Circuit observed that "[b]ecause credible claims of actual innocence are 'extremely rare,' federal court adjudication of constitutional challenges by petitioners who may be actually innocent prevents miscarriages of justice, but does not threaten state interests in finality."  *Doe*, 391 F.3d at 161 (citing *Schlup v. Delo*, 513

U.S. 298, 321-22, 115 S. Ct. 851, 864-65 (1995)).  Drawing upon the Supreme Court's decision in *Schlup*, which addressed the actual innocence exception to a petitioner's ability to file successive or otherwise procedurally defaulted habeas petitions in federal courts, the Second Circuit in *Doe* required that the claim of actual innocence be supported "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Doe*, 391 F.3d at 161 (quoting *Schlup*, 513 U.S. at 324, 115 S. Ct. at 865).

In this instance Warren does not allege that he is actually innocent of the crimes of his conviction, which was the product of his guilty plea and concomitant admission of having committed those offenses. Accordingly, Warren has not provided any compelling grounds for the court to apply the *Whitley* test and recommend that the AEDPA statute of limitations be tolled based upon a claim of actual innocence.  *See*, *e.g.*, *Catala v. Bennett*, 273 F.Supp.2d 468, 473-74 (S.D.N.Y. 2003) (acknowledging *Whitley*'s application to claims of actual innocence but declining to apply it when the petitioner in that case did not attempt an actual innocence claim).

21

In sum, I recommend against the invocation of equitable tolling to salvage Warren's otherwise untimely petition.

### D.   Merits of Warren's Petition

As has been noted, petitioner apparently did not pursue the direct appeal of his conviction to the State's highest court.  He did, however, assert arguments surrounding his sentencing, and specifically his claim that the resulting term of incarceration was unlawful, in the context of both his motion to vacate his sentence, pursuant to section 440.20 of the N.Y. Criminal Procedure Law, and by way of his petition for state habeas relief. Since both of those resulting determinations were pursued through to the Appellate Division, and a request was made for leave to appeal to the Court of Appeals from the denial of his state habeas petition, respondent does not contest Warren's petition on the procedural basis of failure to exhaust and, consequently, I will assume that he has fulfilled his obligation to pursue his claims to the highest state court before seeking to elicit this court's habeas intervention, and will turn to the merits of his claim.

### 1.   Standard of Review

Critical to a review of the merits of Warren's petition is recognition of his deferential standard which this court must apply.  Enactment of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214 (1996), brought about significant new

limitations on the power of a federal court to grant habeas relief to a state

court prisoner under 28 U.S.C. § 2254.  Under the AEDPA, "a

determination of a factual issue made by a State court shall be presumed

to be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C.

§ 2254(e)(1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001)

(quoting § 2254(e)(1)) (internal quotes omitted).  Significantly, a federal

court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was
> > contrary to, or involved an
> > unreasonable application of, clearly
> > established Federal law, as determined
> > by the Supreme Court of the United
> > States; or
> >
> > 2) resulted in a decision that was
> > based on an unreasonable
> > determination of the facts in light of the
> > evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d); *see also Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.),

*cert. denied,* 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.  When

applying this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court may grant
> habeas relief: 1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled? 2)
> If so, was the state court's decision "contrary to"
> that established Supreme Court precedent? 3) If
> not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v.*

*Taylor* and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power was

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting

review standards apply only to federal claims which have been actually

adjudicated on the merits in the state court.  *Washington v. Shriver,* 255

F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit

explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference,

a state court 'adjudicate[s]' a state prisoner's federal claim on the merits

when it (1) disposes of the claim 'on the merits,' and (2) reduces its

disposition to judgment."  261 F.3d 303, 312 (2001); *see Jimenez v.*

24

*Walker,* 458 F.3d 130, 140 (2d Cir. 2006).  Significantly, the Second

Circuit further held that when a state court adjudicates a claim on the

merits, "a federal habeas court must defer in the manner prescribed by 28

U.S.C. § 2254(d)(1) to the state court's decision on the federal claim –

*even if the state court does not explicitly refer to either the federal claim or*

*to relevant federal case law."  Sellan,* 261 F.3d at 312 (emphasis

added).[9,10]

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

applies a rule that contradicts Supreme Court precedent, or decides a

case differently than the Supreme Court on a set of materially

---

[9]     In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply. *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.  That court clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[10]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard. *Sellan*, 261 F.3d at 312. He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

indistinguishable facts. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)). The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).

## 2. Clearly Established Supreme Court Precedent

Warren's petition asserts a single ground, alleging that the net affect of the various sentences imposed in connection with the six crimes of connection was to render the sentence unlawful, in derogation of his right to be free from double jeopardy.

The double jeopardy clause, which forms an integral part of the Fifth Amendment to the United States Constitution, provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. Amend. V. The essence of controlling double jeopardy jurisprudence has been summarized as follows by the Second

26

Circuit:

> [t]he Double Jeopardy Clause protects, among other things, against multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L.E.d.2d 656 (1969). When two acts violate the same statute, . . . the Supreme Court has distinguished between a statute that punishes a continuous offense and one that punishes distinct acts. *See Blockburger v. United States,* 284 U.S. 299, 303, 52 S. Ct. 180, 76 L.Ed. 306 (1932) (two drug sales to the same person on different days punishable as separate offenses). The Court looked to see if lawmakers had intended to criminalize each act. "'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. . . . If the latter, there can be but one penalty.'" *Id.* at 302, 52 S. Ct. 180.

*McCullough v. Bennett,* 413 F.3d 244, 246 (2d Cir. 2005).

It should be noted that the charging of multiple offenses based upon the same conduct does not *per se* violate the double jeopardy clause. *United States v. Cavanaugh,* 948 F.2d 405, 413 n.8 (8th Cir. 1991) (*citing Ohio v. Johnson,* 467 U.S. 443, 449, 104 S. Ct. 2536, 2540-41 (1984)). Instead, the question becomes whether, by enacting the particular criminal provision, the respective legislative body intended that facts underlying the potentially overlapping counts constitute separate "'units' of prosecution". *United States v. Ansaldi,* 372 F.3d at 118, 124 (2d Cir.

27

2004) (*citing Bell v. United States,* 349 U.S. 81, 83-84, 175 S. Ct. 620, 622 (1955)).

Petitioner's double jeopardy argument is perplexing.  The operative crimes for which he received consecutive sentences included attempted escape, attempted burglary, and sexual abuse.  The court has reviewed the transcribed minutes of petitioner's plea hearing and finds no basis to conclude that in accepting pleas to those three charges, and imposing consecutive sentences in connection with those pleas, punished the petitioner twice for the same criminal conduct.[11]

Accordingly, I find no basis to conclude that the state courts' determination that no double jeopardy violation has occurred, arising from his sentencing, was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

## IV.   SUMMARY AND RECOMMENDATION

---

[11]     In his memorandum in opposition to respondent's dismissal motion, petitioner intimates that the sentence that he received may have resulted in a breach of a plea agreement which included assurances as to the sentence to be imposed by the court.  *See* Petitioner's Memorandum (Dkt. No. 11) at 12-22.  If such a claim is being made it is not apparent from the face of Warren's petition.  Moreover, it does not appear that such a claim has ever been fairly presented to the state courts prior to being raised in this proceeding, and therefore is not properly exhausted.  *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 808-09 (2d Cir. 2000) ("To have exhausted claims in state court, petitioner must have "fairly presented" each federal claim to the highest state court.") (citation omitted).

Based upon the circumstances now presented, it appears that petitioner's conviction became final when his time to seek leave to appeal to the Court of Appeals from the Third Department's decision affirming his conviction expired, notwithstanding the fact that the matter was remitted to the trial court for an essentially ministerial act, in the nature of substituting a new order of protection which was compliant with the applicable legal provisions under which it was issued for the prior, invalid order.  Since the petition in this matter was filed more than a year after that date, and having been presented with no proper basis to conclude that the governing limitation period should be equitably tolled, I recommend a finding that the petition is time barred and should be dismissed on this procedural basis, without reaching the merits.  In the event that the court finds that the petition was timely filed and should be considered on its merits, I find that the state courts' determination rejecting Warren's sentence claims was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and find no other basis to conclude that he was the subject of a constitutional deprivation.

Based upon the foregoing it is hereby

RECOMMENDED that respondent's motion to dismiss the petition in

this matter [Dkt. No. 10] be GRANTED, and the petition be DISMISSED in all respects.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     March 12, 2007
           Syracuse, NY